The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Deluca with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and subject matter. *Page 2 
2. All parties have been correctly designated, and there are no questions as to misjoinder.
3. An employee/employer relationship existed at the time of the plaintiff's injury.
4. Mecklenburg EMS Agency was self-insured at the time of plaintiff's injury.
5. At the time of plaintiff's alleged injury, defendant-employer employed the requisite number of employees to be bound by the provisions of the North Carolina Workers' Compensation Act, and the parties were subject to Act.
6. This is a disputed accident or occupational disease claim with a date of injury of December 5, 2006.
7. Plaintiff has an average weekly wage of $1,576.71 and a workers' compensation rate for temporary total disability benefits of $730.00 per week.
8. Plaintiff was out of work from December 25, 2006 through January 28, 2007, July 18, 2007, and from October 30, 2007 through November 2, 2007.
9. The issue for resolution in this matter is whether plaintiff suffered a compensable injury by accident or a compensable occupational disease on December 5, 2006.
10. Stipulated exhibits 1-3 and defendants' exhibit 1 were entered into the record at the hearing before the deputy commissioner.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff has been a paramedic with the defendant-employer for more than five years. Prior to December 5, 2006, plaintiff was in good health except for genetic hypertension. *Page 3 
2. On December 5, 2006, while responding to a call at a residence, plaintiff brushed against a substance on the wall of the residence which plaintiff described as a "dark, chalky substance". The substance became airborne, and plaintiff inhaled it. The plaintiff coughed for 10-15 minutes, but then was able to complete his shift. The dark, chalky substance has never been identified.
3. Within a week or two of December 5, 2006 incident, plaintiff developed a persistent cough. Plaintiff initially sought treatment on December 21, 2006 with his family care physicians at Cotswold Medical Clinic, where he was diagnosed with acute pharyngitis, febrile illness and exposure to strep. Among the treatments provided was an injection of Bicillin.
4. On December 26, 2006, plaintiff was treated at Ballantyne Urgent Care. Plaintiff was eventually hospitalized at Presbyterian Hospital from December 29, 2006 through January 8, 2007. Plaintiff was again hospitalized from January 12, 2007 through January 17, 2007.
5. Following a lung biopsy on January 4, 2007, plaintiff was diagnosed with bronchiolitis obliterans organizing pneumonia (BOOP). Plaintiff subsequently developed a pulmonary embolism and steroid induced diabetes.
6. Dr. Spiers, a board certified physician in pulmonary medicine, internal medicine and critical care, who treated plaintiff, testified that plaintiff's inhalation of the foreign substance at the residence on December 5, 2006 was the likely cause of plaintiff's development of BOOP. Dr. Spiers acknowledged that in many situations the cause of BOOP could not be determined.
7. Dr. Epler is a leading authority on BOOP. He conducted a review of plaintiff's medical records. Dr. Epler's opinion is that without knowing what the dark chalky substance is, he is unable to say that it was the cause of the plaintiff's BOOP with reasonable probability. The only study that has identified mold as a potential cause of BOOP involved mold on top of orange *Page 4 
juice, which had been breathed in by a patient. However, there were differences between the mold case study and plaintiff's case. The timing of the onset of the symptoms was different, and there were radiographic differences between the mold case study and the plaintiff's radiographic studies. The most important difference between the mold case study and plaintiff's case is that the mold case study had a known substance of penicillium, a common mold from foods which was grown from material in the patient's lung. The plaintiff's lavage and biopsy did not grow any cultures. Plaintiff's CT examination was also different than the chest radiograph in the only mold study linking fungal inhalation to BOOP, further reducing the likelihood that plaintiff's BOOP was the result of the inhalation of December 5, 2006.
8. In addition, Dr. Epler's review of plaintiff's medical records supported a possible alternate cause for plaintiff's BOOP. Dr. Epler and Dr. Spiers both agreed that infections, such as pneumonia, can be a cause of BOOP. Plaintiff had green mucous or sputum at one point, which Dr. Epler considered very significant, as it almost always means an infection. A respiratory infection was also suggested by plaintiff's CT and other radiographic studies. According to Dr. Epler, the nodules on plaintiff's CT examination were unusual for typical BOOP and were more suspicious for an infection process.
9. The undersigned give greater weight to the testimony of Dr. Epler than to the testimony of Dr. Spiers.
10. Plaintiff's BOOP has not been proven by the greater weight of the evidence to be the result of plaintiff's exposure to the unknown dark, chalky substance on December 5, 2006.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 5 
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving every element of compensability, including causation. Whitfield v. Lab. Corp of Am.,158 N.C.App. 341, 350, 581 S.E.2d 778, 784 (2003). There must be competent evidence to support the inference that the accident in question resulted in the injury complained of. Click v Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 389 (1980).
2. Plaintiff bears the burden of proving the existence of an occupational disease. Gay v. J.P. Stevens Co., 79 N.C. App. 324, 331,339 S.E. 2d 490, 494 (1986). Plaintiff must show that his employment exposed him to a greater risk of contracting the disease than the public generally and that the employment significantly contributed to or was a significant causal factor in the development of the disease. Booker vDuke Medical Center, 297 N.C. 458, 256 S.E.2d 189, (1979). Accordingly, plaintiff has failed to establish that he suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
3. In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.Click, 300 N.C. 164, 265 S.E. 389 (1980). "However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation." Young v. Hickory Bus. Furn., 353 N.C. 227,230, 538 S.E.2d 912, 915 (2000). The evidence must take the case out of the realm of conjecture and remote possibility, and there must be sufficient competent evidence tending to show a proximate causal relation. Holley v. Acts Corp., 357 N.C. 228, 581 S.E.2d 750 (2003). The greater weight of the competent shows that plaintiff has failed to prove that his BOOP was the result of the December 5, 2006 incident. *Page 6 
4. Plaintiff did not suffer an injury by accident pursuant to N.C. Gen. Stat. § 97-2(6) on December 5, 2006 or an occupational disease pursuant to N.C. Gen. Stat. § 97-53 as a result of his employment with defendant-employer. As such, plaintiff is not entitled to indemnity or medical compensation.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Defendants shall bear the costs, including an expert witness fee of $1,575.00 to be paid to Dr. Epler.
This the 27th day of February 2009.
S/_______________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_______________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION: *Page 7 
 S/_______________________ DANNY LEE McDONALD COMMISSIONER *Page 1